**Christopher A. PICHON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. B14–87–00275–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 7, 1988.

Discretionary Review Refused
Nov. 30, 1988.

Henry L. Burkholder, III, Houston, for appellant.

John B. Holmes, Jr., Calvin A. Hartman, Houston, for appellee.

Before PAUL PRESSLER, MURPHY and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, Christopher A. Pichon, appeals from a judgment of conviction for the felony offense of theft by receiving. TEX. PENAL CODE ANN. § 31.03(b)(2) & (e)(4)(A) (Vernon Supp.1988).[1] A jury rejected his not guilty plea and found him guilty of appropriating a set of "bucket" type seats worth over $750 but less than $20,000, which an unknown person had stolen from

---

1. Unless otherwise indicated, all references to the Texas Penal Code are to the 1988 supple- ment edition.

the complaining witness's 1985 Chevrolet Suburban. The court assessed punishment at five years, probated for five years. We affirm the judgment as modified.

Appellant presents six points of error. The first three challenge the sufficiency of the evidence. In his fourth, fifth and sixth points of error, appellant maintains the trial court erred by: failing to instruct the jury on a lesser included misdemeanor offense; allowing a polygraph operator to attest to appellant's admissions; and failing to indicate in its judgment the reimbursement due appellant's court-appointed attorney. We affirm the judgment as modified.

Viewed in the light most favorable to the verdict, the facts show that Houston Police Officers Nickell and Klawitter went to the One Stop Custom Auto Accessory shop on November 15, 1985. They regularly stopped by the shop as part of their jobs with the "Seat Detail," a special police department investigating theft of car accessories. Their duties included determining whether any of the items for sale that day were stolen. They did this by comparing parts of "stripped" vehicles recovered by the police with items in the store's stock, to see if any matched.

Appellant and two other young men were standing just outside the open front door of the shop when the officers arrived. Two front "bucket" type car seats were on the ground immediately in front of the door. Nickell asked the group who was selling the seats. When no one answered, a shop employee pointed to the appellant. Appellant answered "yes" when Nickell asked him if the seats were his. When Nickell informed the appellant that charges would be filed if the seats were stolen, he denied they were stolen. Officer Nickell later watched as appellant presented identification and signed the shop's police department log sheet.[2] Appellant admitted he received $300 for the seats. The officers removed parts of the plastic seat rails from the seats while at the shop.

After they finished checking other items in the shop's inventory, the officers returned to their office to check their computer files. There they located a 1985 Chevrolet Suburban the police found abandoned the previous day, minus its seats, radio, spare tire and jack. Officer Klawitter took the plastic parts he had removed from the Suburban and turned them over to the crime lab staff, together with parts of the plastic seat rails he and Nickell had taken from the seats at the shop. When the Crime Lab confirmed the parts matched, the officers arrested Pichon at his home after giving him a *Miranda* warning. While driving to the police station, Nickell asked appellant if he had any idea the seats were stolen. Appellant admitted he thought they might be.

At trial, Nickell set the value of the car seats at approximately $4,000. Both he and Klawitter testified the person from whom the defendant had received the stolen property was still unknown to them at trial. The complainant established he owned a 1985 Chevrolet Suburban which had been stolen on November 14, 1985 and that it cost him $3,720 to replace the seats. Jay Watt Hinson, a polygraph operator, testified that after appellant received his *Miranda* warning he admitted he knew the seats were stolen but had not so informed his attorney.

Appellants' first three points of error challenge the sufficiency of the evidence to sustain his conviction. This court must evaluate these points of error by reviewing the evidence in light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Jackson v. State*, 672 S.W.2d 801 (Tex.Crim. App.1984) (en banc).

The first point of error concerns the sufficiency of the evidence to support the allegations of the indictment. As the court of criminal appeals has recently indicated, the

---

**2.** The Houston Police Department furnishes log sheets to shops which purchase auto accessories. The log sheet is a record of items the shop acquires which helps the police trace individuals selling stolen items. *See* Tex.Penal Code Ann. § 31.03(c)(3)(A–C), (c)(4).

*Jackson v. Virginia* standard must be applied when an appellant raises such a challenge to the sufficiency of the evidence. *See Horne v. State*, 749 S.W.2d 74 (Tex. Crim.App.1988) (en banc). The indictment alleged appellant appropriated the complainant's car seats "knowing the property was stolen by another person whose name is unknown." The court's charge repeated the allegation. Appellant maintains his conviction must necessarily be reversed and an order of acquittal entered, because the record lacks sufficient proof of that allegation. We disagree.

■ A fatal variance can result when the indictment alleges the person from whom the defendant received the stolen property is unknown, but the proof developed at trial shows that the indicting grand jury did in fact know the person's name, or could have ascertained it by reasonable diligence. *See Cunningham v. State*, 484 S.W.2d 906 (Tex.Crim.App.1972); *Payne v. State*, 487 S.W.2d 71 (Tex.Crim.App.1972). However, a threshold issue is whether the evidence developed at trial demonstrates that the "unknown" person was actually known or could have been known through reasonable diligence. *Polk v. State*, 749 S.W.2d 813, 817 (Tex.Crim.App.1988). Thus, the State must prove the grand jury exercised due diligence to try to discover the identity of the person from whom the accused received the property only when the evidence at trial shows that the person's identity later became known. *Id.* This is not such a case.

■ As Officers Nickell and Klawitter both testified, at the time of the trial they still did not know the identity of the person from whom the defendant received the stolen seats. Nickell stated appellant gave him and Klawitter only the first names of the two men from whom he allegedly received the seats. Although appellant stated "Kevin" gave a detective the last name "Jones," Nickell stated appellant denied knowing either of the other two young men's last names or their addresses shortly after he was arrested. The record contains no evidence to suggest that the identity of the person who transferred the stolen seats

to appellant later became known. Because the record also fails to disclose sufficient evidence on which to base a contention that the grand jury could have ascertained that person's identity if it had exercised reasonable diligence, there is no basis for appellant's insistence that the State present evidence of the grand jury's efforts to discover the person's identity.

In suggesting the grand jury could have ascertained the identity of the actual thief, appellant focuses on the testimony of the polygraph operator Hinson. Yet Hinson, like Nickell, established only that the person who gave appellant the car seats had the first name "Kevin." Here, as in *Polk*, since the evidence at trial demonstrated that the identity of the original thief remained unknown, the degree of diligence the grand jury exercised in attempting to identify the original thief never became an issue. *Polk*, at 818. Appellant's first point of error is overruled.

■ In his second point of error, appellant argues there is insufficient evidence to support his conviction for theft of property worth over $750 because the only evidence of the "market" value of the seats established they were worth much less. Generally, the value of property is either its market value or its replacement cost. TEX. PENAL CODE ANN. § 31.08(a)(1) & (2) (Vernon 1974); *Sullivan v. State*, 701 S.W.2d 905, 908 (Tex.Crim.App.1986) (en banc). But the Penal Code further provides that replacement value is to be used only when market value is not ascertainable. *See* § 31.08(a)(2). Market value means the amount of cash the property in question would sell for, giving a reasonable time for selling it. *Senters v. State*, 163 Tex.Crim. 423, 425, 291 S.W.2d 739, 740 (1956).

Officer Nickell testified for the State on the value of the seats. A non-owner testifying to the value of an item of property must testify to its fair market value. *Sullivan*, 701 S.W.2d at 908. In addition, a well settled two-pronged standard governs the State's attempt to establish market value through the testimony of a non-owner. The State must first demonstrate that the witness has personal knowledge of the val-

ue of the property, and then offer evidence of market value through that witness's testimony. *See Sullivan*, 701 S.W.2d at 908 (citing established precedent); *see also*, TEX.R.CRIM.EVID. 602 (requiring personal knowledge predicate for witness's testimony); *Cruz v. State*, 494 S.W.2d 564, 566 (Tex.Crim.App.1973) (witness's experience qualified him to testify to value of tires); *Gonzales v. State*, 478 S.W.2d 522 (Tex. Crim.App.1972) (rejecting hearsay-based challenge to police officer's testifying to his personal knowledge of market value of automobile).

Officer Nickell testified he had worked for two years in the police division specializing in cars stolen strictly for their seats, T-tops, radios, tires, and wheels. He specifically stated he had knowledge of the value of Chevrolet Suburban seats and could therefore place the value of seats stolen from a 1985 Suburban at approximately $4,000. We hold the State adequately established Officer Nickell's personal knowledge of the fair market value of the seats. Because Nickell fixed their fair market value at $4,000, an exact dollar amount, the State complied with the second requirement governing attempts to arrive at the fair market value of stolen property through the testimony of a non-owner: actual testimony of market value elicited by the State. *Sullivan*, 701 S.W.2d at 908.

Appellant insists Nickell and the complainant impermissibly offered testimony of the replacement cost of the seats, an estimation of value of stolen property which is proper only when its fair market value is not ascertainable. *See* TEX.PENAL CODE ANN. § 31.08(a)(2). Appellant stresses that Nickell acknowledged the shop sold the seats for $600, and submits that figure, or the $300 appellant received, represents the maximum fair market value of the seats. We disagree. Nickell specifically stated that although the shop might sell the seats for $600, that figure did not represent their value. Under cross-examination, he further qualified the $600 figure by stating it was an estimate, and denied knowing the shop's actual selling price.

Nickell also testified the rails which attach the seat to the floor of the vehicle are frequently broken because thieves pull the seats out quickly, and that the complainant's seats had sustained this type of damage. The jury was therefore entitled to believe that *if* the shop's price was low, it reflected the somewhat damaged condition of the seats. Klawitter testified he and Nickell regularly checked shops like the One Stop Custom Auto Accessory for stolen merchandise. The jury was therefore entitled to infer that the shop deliberately sold the seats at a reduced price. Moreover, because the complainant's Suburban was a 1985 model, and thus fairly new, the jury was entitled to infer that the fair market value of the seats was relatively high.

When viewed in the light most favorable to the verdict, we hold the evidence supports the jury's concluding the fair market value of the seats was at least $750. *Compare Sweeney v. State*, 633 S.W.2d 354 (Tex.App.—Houston [14th Dist.] 1982, pet. ref'd) (reversing conviction on sufficiency of evidence grounds). Appellant's second point of error is overruled.

■ Our disposition of appellant's second point of error controls the issue he raises in his fourth point of error. Appellant argues the trial court committed reversible error by failing to instruct the jury on a lesser included offense, misdemeanor theft by receiving. An accused is entitled to a lesser included offense instruction in the court's charge when: 1) the proof necessary to establish the offense charged includes the lesser offense; 2) there is some evidence that if the accused is guilty, he is guilty only of the lesser offense. *Montoya v. State*, 744 S.W.2d 15, 28 (Tex.Crim.App. 1987) (en banc); *Royster v. State*, 622 S.W. 2d 442 (Tex.Crim.App. [Panel Op.] 1981).

■ The distinction between felony and misdemeanor theft by receiving is the value of the property. *See and compare* TEX. PENAL CODE ANN. § 31.03(e)(3) *with* § 31.03(e)(4)(A). Thus, the felony offense includes the lesser misdemeanor offense. However, as our discussion of appellant's second point of error indicates, our review

of the record reveals no basis for appellant's asserting he was guilty *only* of the misdemeanor offense of receiving property worth less than $750. Appellant's fourth point of error is overruled.

■ Appellant's third point of error challenges the sufficiency of the evidence to support his conviction because the record fails to show he knew the seats were stolen, as required by TEX.PENAL CODE ANN. § 31.03(b)(2). We disagree. The State was required to demonstrate appellant's actual, subjective knowledge that the seats were stolen, in order to establish that he knew he received stolen property. *Dennis v. State* 647 S.W.2d 275, 280 (Tex.Crim.App. 1983) (en banc). Merely demonstrating that a reasonably prudent person would have concluded the property was stolen will not suffice. *Id.*

Two Houston Police Officers stated they saw the appellant at the auto accessory shop where an employee identified him as the seller of the seats. The record indicates appellant received money for the seats while at the shop. Officer Nickell testified appellant acknowledged the seats might be stolen. Finally, the polygraph operator Hinson stated appellant told him he knew he had sold stolen seats but that he had not so informed his attorney. We hold there is sufficient record evidence of appellant's actual subjective knowledge that the seats he received were stolen. There is therefore sufficient evidence to sustain the jury's verdict. Appellant's third point of error is overruled.

■ In his fifth point of error appellant asserts the trial court committed error in allowing Hinson to testify to appellant's admitting he knew the seats were stolen, and that he had not so informed his attorney. Appellant maintains that because the prosecutor had agreed to dismiss the indictment if he passed the polygraph test, the statements made to Hinson constitute evidence in furtherance of a negotiated settlement of the case. Appellant submits his statement was therefore inadmissible pursuant to TEX.R.CRIM.EVID. 408. We disagree.

Appellant went to Hinson's office on July 30, 1986, to take a polygraph examination. Hinson's testimony before the jury contained no statement of the purpose of appellant's visit and did not disclose that he was a polygraph operator. During his interview with Hinson, but after he received a *Miranda* warning, appellant made the admissions at issue. Because appellant was given his *Miranda* warnings prior to his admissions, and because there is nothing to show that Hinson or any other persons made promises to the appellant to induce his confession, the record fails to demonstrate that any prior purported negotiations or statements tainted appellant's confession so as to render it inadmissible. *See Black v. State,* 677 S.W.2d 150, 155 (Tex.App.—Houston [1st Dist.] 1984, *rev'd on other ("pretext" arrest) grounds,* 739 S.W.2d 240 (Tex.Crim.App.1987) (en banc). Appellant's fifth point of error is overruled.

■ In his sixth point of error appellant complains of the trial court's failure to enter in its judgment the specific amount of money due Harris County as reimbursement for court-appointed attorney's fees. The trial court's judgment left the amount of repayment to the county "to be determined at a later date." The statement of facts also reveals the trial court indicated appellant could work out the details of the amount due with his probation officer. We conclude the trial court erred.

The trial judge must incorporate the accused's conditions of probation in its order granting probation, in order that both the probationer and the authorities may know with certainty what those conditions are. *See Stover v. State,* 365 S.S.2d 808, 809 (Tex.Crim.App.1963). The conditions of probation should be clear, explicit, and unambiguous, so that the probationer understands what is expected of him. *Flores v. State,* 513 S.W.2d 66, 69 (Tex.Crim.App. 1974); *McDonald v. State,* 442 S.W.2d 386, 387 (Tex.Crim.App.1969). Furthermore, the court may not delegate the fixing of such conditions to the probation officer or anyone else. *McDonald,* 442 S.W.2d at 387.

We hold the trial court erred by failing to include in its judgment the specific amount the appellant was to reimburse Harris County for court-appointed attorney's fees. We modify the judgment of the trial court by reforming it to delete from paragraph (q) of the conditions of probation the phrase "to be determined at a later date." TEX.R.APP.P. 80(b).

As modified, the judgment of the trial court is affirmed.